1
2
3
4
5
6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO, CALIFORNIA

| MICHAEL LYNN GABRIEL, | CASE NO: |
|---|---|
| Plaintiff | CLASS ACTION COMPLAINT |
| vs. | 1. Breach of Contract<br>2. Unjust Enrichment |
| BLOCK ASSETS, LLC dba BLOCKAS.COM | 3. Conversion<br>4. Fraud |
| Defendant. | 5. RICO |
| | (28 U.S.C. § 1332;  Diversity of Citizenship)<br>Jury Trial Requested |

## CLASS ACTION COMPLAINT

Plaintiff Michael Lynn Gabriel, ("Plaintiff"), brings this Complaint on both his behalf of all others similarly situated, by and through counsel, brings this action against Block Assets, LLC dba Blockas.com (hereinafter referred to as Blockas). Plaintiff's allegations herein are based upon personal knowledge and belief as to his own acts and upon the investigation of its counsel and information and belief as to all other matter.

# INTRODUCTION

1. This is a class action lawsuit brought against the Defendant Block Assets, LLC dba Blockas.com by Plaintiff on behalf of itself and all and similarly situated individuals.

2. Plaintiff brings this action against the Defendant Block Assets, LLC dba Blockas.com hereinafter referred to as "Blockas," because it has unjustifiably converted and kept funds owed to users of its services in violation and breach of contract. The Defendant has acknowledged on its web site that it is holding a minimum of $2.5 million for the Plaintiff but refuses to deliver sad funds to the Plaintiff.

3. The Defendant's action constitute a Ponzi scheme wherein funds that should be delivered to their owners are instead kept and held without justification and used by the Defendant without the owners' consent and without payment of interest for the use of their funds.

4. By way of this lawsuit, Plaintiff seeks to:

    (I) Obtain possession of the $2.5 million which the Defendant is holding for the Plaintiff but nonetheless refuses to deliver the funds as well as for all members of the class for whom the Defendant is also holding funds and refuses to deliver;

    (ii) obtain interest for the funds held for both the Plaintiff and all members of the class,

    (iii) return of all improperly paid fees by the Plaintiff and members of the class; and

    (iv) hold the Defendant accountable for its fraudulent and unlawful practices.

## NATURE OF THE CLAIMS

9. The Defendant operates a cybercurrency company at the website Blockas.com

10. Plaintiff entered into a $2.5 million loan with TF Capital, LLC

11. In completion of the loan TF Capital delivered $2.5 Million in Bitcoins to the Defendant in the Plaintiff's name

12. Plaintiff was to create an account with the Defendant and then would have access to the funds

13. Attached herein is the Plaintiff's profile on the Blockas.com site showing that on Oct 17, 2023, $2.5 million was paid into the account as Bitcoins. Then, on the same day, the $2.5 million in Bitcoins was swapped for cash and the Defendant was directed to transfer by wire the funds to the Plaintiff's bank identified as Bank of America.

14. From Oct 17, 2023 to the present, the Defendant has refused to deliver and transfer the funds to the Plaintiff neither by wire nor by cashier's check.

15. The Defendant initially refused to transfer claiming that it had to be paid $5000 in Bitcoins in order to get a tax clearance certificate from the IRS.

16. The IRS does not charge $5000 for issuing a tax clearance certificate. When informed of this, the Defendant then changed it position and stated that the $5000 was fee for preparing the paperwork to the IRS.

17. The Defendant states on its web site that there are no fees charged by it for its services. Furthermore, the $5,000 tax clearance fee was and is not set forth on its web site. Instead. the Defendant states regarding fees:

" **Why choose Blockas?**

We have an automated platform with NO fees, high yield interest, military grade security with years of experience providing online lending to thousands of happy Blockas customers."

TITLE OF DOCUMENT: CLASS ACTION COMPLAINT
PAGE NO 3 OF 19

HOME    ABOUT US    HOW IT WORKS    CAREERS    FAQS    CONTACT    DASHBOARD

### PROFILE

Good morning! **Michael Gabriel**
Last login: 2023-11-28 01:46:58

### BALANCE

BTC: **0.0184397** ~ ($679.25)
USD: **2,500,088.00**

### ACTIONS

✓ Wallet ref: 8eade9d5-6c7f
✓ Checkings: 325*****

### SOMEONE TO PAY?

Initiate a instant transfer to other Blockas users using their wallet reference.

**MAKE A TRANSFER**

### BALANCE SWAP

Move money between balances using the best market rate.

● To USD   ○ To BTC

Amount (USD)
ex. 2550

| DATE | DESCRIPTION | AMOUNT | STATUS | REFERENCE |
|---|---|---|---|---|
| 17 Oct, 2023 | Payout: Checkings: 325***** (Michael) - WithD | -$2,500,000.00 | ✗ | 32466 |
| 17 Oct, 2023 | Incoming $2500000 at 28163.28 - Swap | +$2,500,000.00 | ✓ | 95721 |
| 17 Oct, 2023 | Swapped ₿88.7680696 to USD wallet - Push | -$2,500,000.00 | ✓ | 235834 |
| 17 Oct, 2023 | Incoming $88 at 28162.82 - Swap | +$88.00 | ✓ | 317308 |
| 17 Oct, 2023 | Swapped ₿0.0031247 to USD wallet - Push | -$88.00 | ✓ | 350260 |
| 17 Oct, 2023 | Wallet chain push - 6a223a9fed7c - Transfer | +$2,500,000.00 | ✓ | 347774 |

**ALL TRANSACTIONS**

18. The Defendant further insisted that the tax clearance fee payment be made in Bitcoins not cash. That requirement is also not disclosed or set forth on the Defendant's web site as condition for delivery of the Plaintiff's funds.

19. Even though the Defendant was already holding in its possession $2.5 million in cash belonging to the Plaintiff, it still demanded yet another $5000 payable in Bitcoins be made before it would release the Plaintiff's funds

20. The Plaintiff did not know of a cryptocurrency company that would sell to the Plaintiff $5000 in Bitcoins and then send them to the Defendant in order for the Defendant to release the Plaintiff's funds over to the Plaintiff.

21. The Defendant recommended two cybercurrency companies: Coinbase and Gemini, for the Plaintiff to use in order to pay the Defendant the $5,000 Bitcoins.

22. Plaintiff in order the get the Bitcoins to pay the tax clearance fee which was a requirement not disclosed on the Defendant's web site, opened accounts with both Coinbase and Gemini and purchased over $5000 in Bitcoins from each company

23. However when transfer of the $5000 in Bitcoins to the Defendant was requested neither Coinbase not Gemini would deal with Blockas. Both companies have refused to transfer the Bitcoins to Defendant.

24. To complete the payment required by the Defendant Plaintiff to TF Capital which agreed to the purchase Bitcoins and make the tax clearance payment to the Defendant in the Plaintiff's name.

25. Plaintiff wired $5,200 to TF Capital which then bought $5000 in Bitcoins and had them transferred to the Defendant in the Plaintiff's name as payment for the Tax Clearance.

26. After the tax clearance payment fee had been completed, the Defendant on November 17, 2023 acknowledged receipt and stated that the transfer would take place within three

business days.

27. The Defendant has never transferred the money. Instead the Defendant claimed in an email on November 21, 2023 that it had tried to do the transfer but that it was declined by the receiving bank ie Bank of America.

28. The Defendant's email was false. Plaintiff went to Bank of America and asked why the account transfer was denied and was told there was no record of there of a wire transfer being attempted to the Plaintiff's account.

29. Plaintiff did not understand why Bank of America said that there was no record of a transfer attempt.

30. Plaintiff emailed the Defendant and told it that Bank of America claimed that no wire transfer had been attempted.

31. The Defendant responded, and repudiated its first email and now stated that it never attempted to do the transfer because Bank of America is not qualified to receive wire transfer.

32. The Defendant now has made a new requirement that the Plaintiff open a digital investment account with a brokerage to receive a wire transfer of his funds.

33. There is nothing on the Defendants website about having to create a digital investment account to receive the funds from an account

34. The Defendant has been adding unilaterally new requirements to the contract so as to extend and delay the payment of the money it is holding for the owners

   (i) First the Defendant now claims a $5000 tax clearance fee which is not required by the IRS and is not mentioned on the website in order for it to release the funds.

   (ii) Secondly, the Defendant is demanding that the tax clearance fee be paid in Bitcoins. Had the Defendant disclosed this fee on its web site the $5000 in Bitcoins could have been taken out of the $2.5 million before converting to cash.

(iii) Thirdly, the Defendant is now requiring a brokerage account be opened for a digital investment account to receive the wire transfer again something not stated on the website.

35. Plaintiff notified Defendant on November 23, 2023 that he expected the Plaintiff to immediately either do a wire transfer Bank of America, or to send a certified check in the amount of $2.5 million dollars to the Defendant to the Plaintiff in overnight mail. The Defendant has done neither and has kept the Plaintiff's funds.

36. The Defendant has been holding Plaintiffs money now for six weeks and owes interest on the account on $2.5 million dollars from the time the request was made to the time that the money is actually going to be transferred

37. The Defendant has engaged and operated in this situation with many Clients like the Plaintiff and complaints of this type with negative reviews have been repeatedly made on the Internet.

38. The Defendant's schemes and misconduct also violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). The Defendant has engaged in a pattern of racketeering activity that includes, but may not be limited to: fraud under California law as well the repeated and continuous use of mails and wires in the furtherance of multiple schemes to defraud as detailed through this Complaint.

### PARTIES

39. Plaintiff Michael Lynn Gabriel is an American Citizen residing in East Palo Alto California.

40. Defendant **BLOCK ASSETS, LLC dba BLOCKAS.COM** is a Florida Limited Liability Company.

## JURISDICTION AND VENUE

41. Under 28 U.S.C. § 1332, federal courts may hear cases in which a citizen of one State sues a citizen of another State or nation and the value of property at stake is more than $75,000. In this action, the Plaintiff is seeking the transfer and delivery to the Plaintiff of the $2.5 Million ($2,500,000) in cash being held by the Defendant for the Plaintiff in an account in the Plaintiff's name

42. Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action arose in this District:

   a. The contract which is the basis of this suit was entered into in California in this District, and

   b. The contract was to be performed in this District with the transfer of the $2.500,000 into the Plaintiff's bank account at Bank of America.

43. This Court also has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1131, as Plaintiff asserts a federal claim against the Defendant in Count V, under RICO.

## CLASS ACTION ALLEGATIONS

44. This action is brought, and may properly proceed, as a class action, pursuant to Rule 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a Class defined as follows:

### Nationwide Class

45 All persons, businesses and entities who were clients of the Defendant and have been denied delivery of their funds and were improperly charged fees as requirement to receiver their funds.

46. Plaintiff reserves the right to modify, change, or expand the class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

**Numerosity**:

47. The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, Plaintiff believes, and on that basis allege, that thousands of persons exist who are and were clients of the Defendant each of whom could file a similar Complaint to this one filed herein for the delivery of the funds as well as recovery of the improperly fees included but not limited to their tax clearance fees.

**Existence/Predominance of Common Questions of Fact and Law:**

48. Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

(a) Is the Defendant improperly refusing to deliver and transfer funds to their owners?

(b) Is the Defendant improperly requiring payment of fees for its services as a requirement transfer for their funds to the owners?

(c) Is the Defendant improperly requiring payment of tax clearance fees in bitcoins?

(d) Is the Defendant improperly requiring the owners to use of a digital investment account in order to have their cash transferred to their banks?

49. Typicality: Plaintiff's claims are typical of the claims of the Class and Class members were injured in the same manner by Defendant's uniform course of conduct alleged herein. Plaintiff and all Class members have the same claims against Defendant relating to the conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to the giving rise to the claims of all Class Members.

**Adequacy**:

50. Plaintiff is an adequate representative for the Class because his interests do not conflict with the interests of the Class that it seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex litigation and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his Counsel.

**Superiority**:

51. A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by Defendant. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified.

52. Defendant has acted, and refuses to act, on grounds generally applicable to the Class, hereby making appropriate final equitable and injunctive relief with respect to the Class as as a whole.

# FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

52. The allegation that Plaintiff had a contract with the Defendant wherein the Defendant was to transfer $2.5 million to the Plaintiff's bank is common to all Counts.

54. The allegation that the Defendant never informed the Plaintiff prior to entering the contract that their would be a $5,000 fee that had to be paid before the Plaintiff's funds would be delivered to his bank is common to all Counts.

55. The allegation that the Defendant never informed the Plaintiff prior to entering the contact that tax clearance fee had to be paid in Bitcoins before the account was opened with the Defendant.

56. The allegation that digital asset account with a brokerage had to be opened to receive the funds rather than the designated bank was not disclosed before entering the contract is common to all Counts.

# CAUSES OF ACTION

## CLAIM I

### BREACH OF CONTRACT

57. Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

58. On or about October 17, 2023, the Plaintiff and Defendant entered into a written agreement supplemented by representations and statements set forth on its web site Blockas.com.

59. Under the written terms of the contract,

   a. The Defendant received $2.5 million of Bitcoins from TF Capital, LLC and was hold the Bitcoins in an account created by the Plaintiff

   b. Upon request of the Plaintiff, the Bitcoins were to be swapped for cash and the proceeds then transferred to Plaintiff's accouut at the Bank of America.

60. Plaintiff has fully performed all obligations of the contract in accordance to the terms and conditions as well as the representations made on the Defendant's web site.

61. The Defendant materially breached the parties' contract by the following acts:

   (a) The Defendant demanded payment of $5000 in Bitcoin as a fee for transferring the Plaintiffs funds to his Bank of America account even though the no fees were to be charged for the Defendant's services.

   (b) After the demanded $5,000 Bitcoin fee was paid the Defendant has still refused the transfer the Plaintiff's $2.5 million to Plaintiff.

   (c). Defendant unilaterally amended the contract by now insisting that a digital investment account be established with a brokerage to receive the funds rather than wiring the funds to Plaintiff's bank ie Bank of America or sending a certified to cashier's check

62. As the direct result of the Defendant's conduct described above, Plaintiff has suffered damages in an amount to be proven at trial, but not less than $4 million, as a result of the lack of his $2.5 million which has resulted in the interruption of Plaintiff's business operations, loss of revenues, loss of corporate opportunities, loss of goodwill, and other damages.

# CLAIM II

## WRONGFUL ACQUISITION AND RETENTION OF PROPERTY/ UNJUST ENRICHMENT

63. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each of the allegations of the foregoing Complaint.

64. By virtue of the contract between the parties, the Defendant was given possession of $2.5 million for the sole purpose of being delivered and transferred to the Plaintiff's bank, identified as Bank of America.

65. The Defendant never attempted to transfer the Plaintiff's funds to his account at the Bank of America.

66. Instead of fulfilling the terms of the contract and transferring to the Plaintiff his funds, the Defendant has kept and retained the funds for itself in violation of the contract

67. As a result of the breach of contract, the Defendant has been unjustly enriched in excess of the $2.5 million by keeping the Plaintiff's funds under its sole and complete control

68. Plaintiff is entitled to civil penalties in an amount in excess of $2.5 million which is the value of his funds being held by the Defendant in its wrongful appropriation of Plaintiff's property.

70. The Defendant's conduct was oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiffs' rights. Therefore, Plaintiffs are entitled to an award of exemplary or punitive damages

71. Plaintiff is entitled to attorney fees and costs on this cause of action.

## CLAIM III

## CONVERSION

72. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each of the allegations of the foregoing Complaint.

73. By virtue of the contract between the parties, the Defendant was given possession of $2.5 million for the sole purpose of being delivered and transferred to the Plaintiff's bank, identified as Bank of America.

74. The Defendant never attempted to transfer the Plaintiff's funds to his account at the Bank of America.

75. Instead of fulfilling the terms of the contract and transferring to the Plaintiff his funds, the Defendant has converted, kept and retained the funds for itself in violation of the contract and in doing so has permanently deprived the Plaintiff of his funds.

76. As a result of the conversion of the Plaintiff's funds, the Defendant has derived the Plaintiff and been personally enriched in excess of $2.5 million by keeping the Plaintiff's funds.

77. Plaintiff is entitled to civil penalties in an amount in excess of $2.5 million which is the value of his funds being held by the Defendant in its wrongful conversion of Plaintiff's property.

78. Plaintiff is entitled to attorney fees and costs on this cause of action.

79. The Defendant's conduct was oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiffs' rights. Therefore, Plaintiffs are entitled to an award of exemplary or punitive damages.

## CLAIM IV
## FRAUD -CONCEALMENT

80.     Plaintiff incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

81.   The Defendant intentionally failed to disclose material facts to Plaintiffs, including but not limited to the following:

(a)   Defendant never informed the Plaintiff prior to entering the contract that their would be a $5,000 fee that had to be paid before the Plaintiff's funds would be delivered to his bank

(b)   The Defendant never informed the Plaintiff prior to entering the contact that a tax clearance fee of $5,000 had to be paid in Bitcoins before the account was opened.

(c)   The Defendant never informed the Plaintiff prior to entering the contact that a digital asset account with a brokerage had to be opened to receive the funds rather than the designated bank ie the Bank of America.

82.   Plaintiff was unaware of the facts that the Defendant concealed from him.

83.   When the Defendant omitted these material facts, it did so with the intention to deceive, defraud, and induce Plaintiffs into acting in reliance on them and entering into the contract with the Defendant.

84.   Had the Defendant disclosed the omitted facts, Plaintiff would have acted differently. Plaintiff woulds not have entered into the contract with the Defendant and a new company handle the escrow for the loan from TF Capital would have been selected. The $2.5 million deposited by TF Capital into the account returned to TF Capital for delivery to the replacement escrow company.

85. As a direct result of the Defendant's conduct described above, Plaintiff has suffered damages in an amount to be proven at trial, but not less than $4 million, as a result of the loss of the $2.5 million of Plaintiff's funds and the effect of the loss of the funds on Plaintiff's business in its operations, loss of revenues, loss of corporate opportunities, loss of goodwill, and other damages.

86. The Defendant's conduct was oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiffs' rights. Therefore, Plaintiff is entitled to an award of exemplary or punitive damages.

## CLAIM V

## VIOLATION OF 18 U.S.C. § 1962

## (RICO)

87. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

88. Plaintiff is a "person" within the meaning of 18 U.S.C. § 1961(3)

89. The cybercurrency operations that the Defendant administers is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). The Defendant in its cybercurrency operations was and still is engaged in activities affecting interstate and foreign commerce at all times relevant to this Original Complaint.

90 The Defendant has conducted or participated, directly or indirectly, in the conduct of the cybercurrency account in relation to Plaintiff through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5).

91. The pattern of racketeering activity under 18 U.S.C. § 1961(1) and (5), described more fully throughout this Complaint, includes the Defendant's multiple, repeated, and continuous

use of the Internet mails and wires in furtherance of as PONZI Scheme wherein payments to owners of their funds was not made when required

92. By not making the delivery of funds when required, the Defendant improperly had free and unrestricted access and usage of the owners' funds until the payments were if ever made.

93. In addition, by not transferring the funds when required the Defendant was violating the duties imposed upon it as a clearing agency under the Securities and Exchange Act.

94. Section 3(a)(23)(A) of the Exchange Act [15 U.S.C. § 78c(a)(23)(A)] defines the term "clearing agency" as

> "any person who acts as an intermediary in making payments or deliveries or both in connection with transactions in securities or who provides facilities for comparison of data respecting the terms of settlement of securities transactions, to reduce the number of settlements of securities transactions, or for the allocation of securities settlement responsibilities," as well as "any person… who
>
> (i) acts as a custodian of securities in connection with a system for the central handling of securities whereby all securities of a particular class or series of any issuer deposited within the system are treated as fungible and may be transferred, loaned, or pledged by bookkeeping entry without physical delivery of securities certificates, or
>
> (ii) otherwise permits or facilitates the settlement of securities transactions or the hypothecation or lending of securities without physical delivery of securities certificates."

95. Registered clearing agencies are subject to comprehensive regulation — including record keeping requirements and SEC examination—under the Exchange Act and the rules thereunder, providing important safeguards to investors and market participants, and to the maintenance of fair competition. Moreover, properly registered clearing agencies must enact a set of rules to govern their and their members' behavior, and these rules are subject to review by the SEC.

96. Specific and detailed explanations and examples of the Defendant's use of the mails and wires to engage in a pattern of racketeering activity and embezzlement, theft, and conversion of both the Plaintiff's and the members' funds are detailed throughout this Original Complaint.

97. As a direct result of Defendant's violation of 18 U.S.C. § 1962(c), Plaintiff has suffered substantial injury to its business and property within the meaning of 18 U.S.C. § 1964(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in its favor against the Defendant as follows:

A. For the First Cause of Action Judgment- Breach of Contract in the amount of $2.5 million.

B. For the Second Cause of Action - Unjust Enrichment, judgment in the amount of $2.5 million.

C. For the Third Cause of Action - Conversion, judgment in the amount of $2.5 million.

D. For the Fourth Cause of Action - Fraud, judgment in the amount of $2.5 million.

E. For the Fifth Cause of Action - RICO, Treble the damages sustained by Plaintiff as described above under 18 U.S.C. § 1962(c);

F. Statutory interest in pursuant to California law from Oct 17, 2023

G. Compensatory and consequential damages resulting from the injury to Plaintiff in excess of $2,000,000 dollars, to be further established at trial;

H. Awarding punitive and exemplary damages for Defendant's intentional and tortious conduct in such amounts as the proofs at trial will show;

I. Awarding reasonable attorneys' fees, as provided by common law, Federal or State statute, or equity, including 18 U.S.C. § 1964(c) and 29 U.S.C.§ 1132(g);

J. Awarding costs of suit;

K. Awarding pre-judgment and post-judgment interest as provided by common law, Federal or State statute or rule, or equity; and

L. For such other relief and damages as the Court finds just and proper

## JURY DEMAND

Plaintiff demands a trial by jury.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint:

(1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the complaint otherwise complies with the requirements of Rule 11

Dated: November 30, 2023        Respectfully submitted,

　　　　　　　　　　　　　　　　　　 /s/ Michael Lynn Gabriel
**LAW OFFICE OF MICHAEL LYNN GABRIEL**
**MICHAEL LYNN GABRIEL CA Bar 86924**
**1903A Cooley Ave**
**East Palo Alto, CA 94303**
**650-888-9189**
**aetal@earthlink.net**

**Attorney for Plaintiff**

TITLE OF DOCUMENT:  CLASS ACTION   COMPLAINT
PAGE NO 19   OF  19